HENRY MASON, Plaintiff and Appellee, *v.* WHITE STAR BUS LINE, INC., Defendant and Appellant.

No. 6836. Argued June 4, 1936.—Decided January 19, 1937.

*Celestino Iriarte, F. Fernández Cuyar* and *Héctor González Blanes* for appellant. *J. Henri Brown, G. E. González, G. Benítez Gautier* and *Sergio G. Gelpi* for appellee.

MR. JUSTICE TRAVIESO delivered the opinion of the Court.

The plaintiff sued to recover $11,929 on account of damages suffered as a result of injuries which he received in a collision between two buses belonging to the defendant.

It is alleged in the complaint that the plaintiff boarded bus P-16, in Santurce, to go to San Juan as a passenger; that when the bus was traveling on Avenida Ponce de León toward San Juan, and when it reached the curve just after crossing the Guillermo Esteves bridge, the bus passed bus no. P-32, also belonging to the defendant, and that the two vehicles collided, as a result of which the plaintiff suffered a fracture of the left humerus and other injuries and contusions in various parts of the body; and that the sole, proximate and direct cause of such injuries was the negligence of the two employees of the defendant, who were driving and operating the two vehicles.

The defendant denied that the two buses collided with each other, either in crossing or at any other time, and denied further that the plaintiff's injuries, if he suffered any, were caused by the negligence of the two employees driving the two buses. As a special defenses, defendant averred:

1. That the complaint does not state facts sufficient to constitute a cause of action.
2. That the sole, proximate and direct cause of the accident was the negligence and carelessness of the plaintiff in carrying this elbow and left forearm outside the bus window, in violation of the written notice affixed in the interior of the vehicle, by which passengers are warned against the danger of such a practice.
3. That on the night of the accident, October 2, 1932, the street was partially obstructed by electric light poles which had been thrown down by the hurricane of September 26 of the same

year, leaving open for traffic only a portion of the avenue, sufficient, however, for two vehicles to pass at the same time; that at the moment of passing, both vehicles were going at a moderate speed, taking the precautions necessary to avoid accidents, and that they passed each other but that at no moment did they collide or even touch their sides, and that neither of the two buses suffered any injury.

A trial was had during which an ocular inspection was made of the vehicle in which the plaintiff was riding; and the court entered judgment ordering the defendant to pay to the plaintiff the sum of $2,429, damages, plus costs and attorneys' fees. The defendant took the present appeal.

The errors assigned by the appellant are:

"1. The court below erred in holding that the defendant's vehicles collided with or scraped each other.

"2. The trial court committed manifest error in holding that the plaintiff was carrying his elbow and forearm within the vehicle; in holding that the plaintiff's theory is sustained by the evidence and is more logical than that of the defendant; and in not holding that the conduct of the plaintiff was negligent and that he is therefore prevented from recovering any damages from the defendant.

"3. The court erred in finding that the determining cause of the injuries suffered by the plaintiff was the supposed collision between the vehicles.

"4. The trial court erred, and abused its discretion, in ordering the defendant to pay to the plaintiff the costs and attorneys' fees of the proceeding."

██ We may consider the assignments of error jointly, since they refer to the weighing of the evidence by the trial court. We shall examine the evidence.

Rafael Ríos, Jr. testified: that he got on the bus at the same place at which the plaintiff Mason and Mr. Urquhart took it, Mason seating himself on the left side of the third seat on the left of the bus, Urquhart on the same seat at Mason's side, and the witness Ríos on the extreme left of the second seat on the right side, with his back toward the front of the bus, engaged in conversation with the other two;

that on reaching the curve he felt "a scraping noise and a cracking noise like that of sticks;" that then Mr. Mason complained that his arm had been broken; that he knews that the two buses collided because he heard "the distinct scrape of the two buses and a cracking noise like breaking sticks, something splintered"; that there was no one else on the bus but those three and the chauffeur; that he did not notice upon what part of the window Mr. Mason had his arm or his left elbow.

Robert Charles Duff Urquhart corroborated in all its parts the testimony of Rafael Ríos, Jr., stating that he knows that the buses scraped each other because he heard a noise which can only be described as a scrape, that it had something to do with the wooden part of the bus; and that he heard that noise very distinctly; that in spite of the obstacles on the part of the road where the accident occurred, there was sufficient space for the two buses to pass, leaving a fair space, a space of two feet between them.

The plaintiff, Henry Mason, testified that after the bridge had been passed, the chauffeur of his bus blew his horn, and he looked and saw that another bus was coming, but that since there was room, he kept on talking and that all at once he saw out of the corner of his eye that that bus instead of keeping on going as it had been, turned and hit him on the elbow; that at that time he was seated with his arm upon the window frame; that between the seat and the side of the bus there is space to put an elbow; that at the place where he was seated there were three iron bars, the first of which was three inches from the edge of the sill where he had his arm, and the other two 2½ inches; that the center of the other bus hit him and that "there was a collision, not exactly a collision, but a loud noise, a scrape" and all at once he found that his arm was broken. (On cross-examination) that during the trip he was riding facing toward the front of the bus, with his left arm resting against the bars in the window; that it is possible that some part of his

arm protruded beyond the bars; that the three bars occupied about 9 inches from the base of the window; that it is not true that he was carrying his arm upon the three protecting bars; that he does not know what part of the bus touched him, but that he has the impression that it was the center; that the bars are toward the outside and that he had his elbow resting on the window sill against the bars.

The oral evidence for the defendant tended to show that the two buses involved in the accident suffered by the plaintiff had been examined a few moments after the event and showed no damage whatever, as a result of which it was concluded that there had been no collision or contact whatever between the two vehicles.

Antonio Velázquez, the chauffeur of the bus in which the plaintiff was riding, testified that Mason was seated on the third seat on the left, with his right arm upon the back of the seat and the other upon the protecting bars of the bus; that he saw Mason in that position at Stop 44, at Stop 20 and on various other occasions; that he saw him through the mirror and saw that he was in that position; that Mason was resting his left arm on top of the last window bar. Upon cross-examination by the plaintiff, he answered that he could not see in what position Mason was when the accident occurred.

As a result of an ocular inspection of bus No. P–16, the court made the following conclusions of fact:

" . . . The court finds that the bus has five seats and one at the rear with an aisle in the center separating the seats. The bus is made by the General Motors Corporation. The court finds that the inside distance between the interior wall to the bars is two and one-half inches, and the distance between the bars is two and one-half inches; and the distance from the exterior wall to the first bar is three inches, and from the window sill to the last bar nine inches. From the seat to the inside of the window frame it is ten and one-half inches when a passenger is seated. From the back of the seat to the inside of the window frame it is thirteen and one-half inches, and three-quarters of an inch the dimension of the rim which is on the

inside of the window, which rim overhange the window frame one-half inch. Three and one-half inches is the width of the window including the rim.''

In weighing these facts in relation with the testimony of the witnesses for both parties, the court reached the following conclusion in its opinion:

'' . . . As to the manner in which Mason was seated, the statement of the chauffeur must also be discarded as absurd. Let anyone try to put his elbow or his arm on top of the iron bars crossing the windows of buses and he will see how impossible it is to maintain such an uncomfortable position. Moreover, at the ocular inspection, the plaintiff voluntarily and at the request of counsel for the defendant, seated himself as he was when the accident occurred, and so seated, we find what we stated at the ocular inspection, to wit:

'' 'The court finds that if two passengers are seated on the third seat on the left side of the bus, the two passengers are touching with no space between them. Mr. Mason seats himself and assumes the same position in which in his testimony he stated he was when the accident occurred, and the court finds that his left arm rests upon the overhang of the window sill and that no part of his arm or elbow protrudes from the interior of the bus.' Counsel for the defendant again insisted upon his seating himself and placing his arm upon the last bar on the left side of the bus and when plaintiff had so placed himself the court stated:

'' 'The court finds that the witness Mr. Mason assumes the position requested by the defendant and places his left arm on top of the last bar, and then forms an angle of 90°. The point of the elbow outside of the vehicle.' We have, however, already said that such an absurd and uncomfortable position cannot be maintained.''

There can be no doubt that there is a conflict of evidence between the parties and between the theories advanced by the plaintiff and by the defendant to explain the accident. The trial court has the duty and the responsibility of deciding such conflicts since it has a better opportunity to do so after seeing the witnesses and hearing them testify and after making an ocular inspection of the place where the accident occurred. In such case, after hearing the oral evidence and after inspecting the scene of events, the trial court has

reached the conclusion that the plaintiff's theory is sustained by the evidence, and is more logical. From the record there is no proof whatever, and the court below so found, that at the moment when he received the blow which caused the injury, the plaintiff carried his arm on top of the last protecting bar in the window. The result of the ocular inspection led the court to conclude that the position which the defendant says that the plaintiff had assumed at the time he received the injury is uncomfortable, absurd and impossible to maintain.

Since it has not been contended that the court below was moved by bias or prejudice, and since it does not appear, in our opinion, that manifest error has been committed in weighing the evidence, the judgment appealed from is affirmed.

Mr. Justice Wolf and Mr. Justice Córdova Dávila took no part in the decision of this case.